```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```
_____

HELEN RICHARDSON, as            )
Administratrix for the Estate   )
of GEORGE RICHARDSON, JR.,      )
and as Legal Guardian of the    )
Estate of TAVARES RICHARDSON,   )
a minor                         )
                                )
     Plaintiff,                 )
                                )
v.                              )    No. 05-2145 Ma/V
                                )
MARION DUGDALE, M.D.;           )
CHRISTOPHER BUCHANAN, M.D.;     )
PATRICIA ADAMS-GRAVES, M.D.;    )
UT MEDICAL GROUP, INC.; JOHN    )
DOE, M.D., a/k/a Dr. BABB;      )
CAMPBELL CLINIC, P.C.; ROSE     )
M. SAYGER, R.N.; and            )
METHODIST HEALTHCARE            )
TRANSPLANT PROGRAM, L.L.C.      )
d/b/a/ UT BOWLD HOSPITAL        )
                                )
     Defendants.                )
_____

            **ORDER ON PENDING MOTIONS FOR SUMMARY JUDGMENT**
_____

Plaintiff sues for medical malpractice. Before the court are two motions for summary judgment: (1) Defendant Campbell Clinic P.C.'s ("Campbell Clinic") motion filed on June 30, 2005 and supplemented on December 16, 2005, to which Plaintiff Helen Richardson ("Plaintiff"), as Administratrix of the Estate of George Richardson, Jr., Decedent ("Decedent"), and Legal Guardian for the Estate of Tavares Richardson, a minor, responded on January 15,

2006 and (2) Defendant Rose M. Sayger's ("Nurse Sayger") motion[1] filed on April 15, 2005, to which Plaintiff responded on May 17, 2005.

## I. Jurisdiction

Jurisdiction is based on diversity of citizenship. Plaintiff is a resident citizen of Virginia. ( Am. Compl. at ¶ 2.) Defendants Marion Dugdale, M.D. ("Dr. Dugdale"), Christopher Buchanan, M.D. ("Dr. Buchanan"), Patricia Adams-Graves, M.D. ("Dr. Adams-Graves"), John Babb, M.D., ("Dr. Babb"), and Nurse Sayger are adult citizens of Tennessee. (Am. Compl. at ¶ 4-6,8, 10) Defendants UT Medical Group, Inc. ("UTMG"), Campbell Clinic, and Methodist Healthcare Transplant Program, LLC d/b/a UT BOWLD Hospital ("Methodist") are Tennessee corporations. (Am. Compl. at ¶ 7, 9, 11.) The amount in controversy exceeds $75,000.  This court, therefore, has diversity jurisdiction under 28 U.S.C. § 1332.

## II. Background

On the morning of February 27, 2004, Decedent was admitted to the Acute Receiving Area at Methodist and complained of severe pain in his right thigh. (Am. Compl. at ¶ 17.) Dr. Dugdale was Decedent's attending physician and took X-rays of Decedent's right thigh, which showed a total hip prosthesis, but no findings to explain Decedent's pain.  (Am. Compl. at ¶ 18-20.) Dr. Dugdale

---

[1] Sayger filed a motion to dismiss or, in the alternative, motion for summary judgment.  Because the motion for summary judgment is GRANTED, the motion to dismiss is DENIED as moot.

2

consulted with Dr. Babb, who performed an orthopedic examination and injected Depomedrol in the right hip. ((Am. Compl. at ¶ 21.) No blood work or other laboratory studies were ordered. Dr. Dugdale's final diagnosis, based on Dr. Babb's recommendation, was "right greater trochanteric bursitis." Decedent was given a prescription for Demerol, a narcotic analgesic, and instructed to follow up at Campbell Clinic in two weeks, but to return to Methodist if his symptoms worsened. ((Am. Compl. at ¶ 22-23.) Decedent was discharged from Methodist approximately three hours after his admission. ((Am. Compl. at ¶ 24.)

On February 28, 2004, at approximately 10:10 p.m., Decedent and his sister Bobbie Moredock ("Moredock") returned to the Acute Receiving Area of Methodist. (Am. Compl. at ¶ 25.) Decedent informed Nurse Sayger that he had been seen on February 27th and given a shot and prescription for Demerol, but that he was still in pain. (Am. Compl. at ¶ 26.) Decedent was evaluated by Dr. Buchanan, who provided medical care under the supervision of Dr. Adams-Graves. Dr. Buchanan's final diagnosis was sickle cell crisis, and he noted on the chart that Dr. Dugdale should be informed of the Decedent's status by the nursing staff. (Am. Compl. at ¶ 29-30.) No blood work or other laboratory studies were ordered, and Decedent was discharged at 1:25 a.m. despite Moredock's pleas that Decedent be admitted. Moredock also asked to speak with Dr. Dugdale, but Nurse Sayger said that Dr Dugdale was

asleep and that Decedent should follow up with Dr. Dugdale "as scheduled." (Am. Compl. at ¶ 34-35.)

Decedent was admitted to the Emergency Department at the Cross County Hospital in Wynne, Arkansas, on February 29, 2004, at approximately 3:45 p.m.. Decedent was evaluated by Dr. Godfrey Fondinka, who noted that Decedent's respirations were labored and ordered labs. ((Am. Compl. at ¶ 40.) Decedent was stabilized and transferred to Methodist, where he was pronounced dead at 8:07 a.m. on March 1, 2004. (Am. Compl. at ¶ 46.)

Plaintiff alleges that the Defendants failed to monitor, assess, and/ or treat Decedent's condition properly following his February 27, 2004 admission to the emergency department. (Am. Compl. at ¶ 47.) Plaintiff alleges that Defendants were negligent, committed malpractice, and/or violated The Emergency Medical Treatment and Active Labor Act. Plaintiff seeks compensatory damages in an amount up to three million dollars and punitive damages in an amount up to thirty million dollars.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>,

4

477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make a contrary showing, summary judgment is appropriate, Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

5

**IV. Campbell Clinic's Motion for Summary Judgment**

Campbell Clinic argues that Plaintiff's claim for medical malpractice fails as a matter of law because Campbell Clinic had no direct role in the care and treatment of the Decedent. (Supp. Mtn. for Summ. J. at 6.) Campbell Clinic also argues that there is no evidence that Campbell Clinic acted with less than or failed to act with ordinary and reasonable care in accordance with the applicable standards of professional malpractice. (Id. at 7.) Plaintiff urges this court to deny Campbell Clinic's motion or, in the alternative, to allow additional time to conduct discovery. (Memo. in Supp. of Plaintiff's Opp. to Mtn. for Summ. J. At 1.)

Plaintiff argues that summary judgment is inappropriate in this case because genuine issues of material fact remain in dispute. Plaintiff cites Campbell Clinic's revision of its original statement that it has "never been a party to a contract or agreement...to provide supervision.... of medical residents" at Methodist so that the statement now reads more narrowly, specifying that there are "no known written documents" about such an agreement (Memo. In Supp. of Mtn for Summ. J., ¶ 13.; Supp. Memo. ¶ 13; Memo. in Supp. of Plaintiff's Opp. to Mtn. for Summ. J. at 14.) Plaintiff also argues that Campbell has acknowledged that Dr. Babb was acting under its supervision.  (Supp. Memo. ¶ 31; Memo. in Supp. of Plaintiff's Opp. to Mtn. for Summ. J. At 1.)

Viewing the facts in the light most favorable to the

Plaintiff, there is a disputed material fact. Plaintiff has asserted that Campbell Clinic supervised Dr. Babb and thus had a direct role in the care of the Decedent. Campbell Clinic has admitted that, in theory, Dr. Babb was acting under its supervision. (Supp. Memo. ¶ 31.) The fact and degree of any supervision remain at issue. Whether Campbell Clinic acted with less than or failed to act with ordinary and reasonable care cannot be resolved on summary judgment.

Campbell Clinic's motion for summary judgment is DENIED.

**V. Rose Sayger's Motion for Summary Judgment**

Nurse Sayger argues that the court lacks jurisdiction and that she is immune from liability. Plaintiff argues that the relationship between Nurse Sayger and Methodist is unclear and more discovery is needed. Therefore, Plaintiff argues that Nurse Sayger's motion for summary judgment should be denied or the court should order extended discovery.

At all times relevant to this action, Nurse Sayger was employed and paid solely by the University of Tennessee. (Affidavit of Nurse Sayger ¶ 4.) Tennessee Code Annotated § 20-13-102 in pertinent part states:

> Actions Against the State Prohibited. (a) No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

This statute prohibits any actions against the state of Tennessee. Courts have held that, when an employee of a state entity is sued for acts or omissions undertaken while acting in that employee's capacity as state employee, the employee is entitled to the state's sovereign immunity. See e.g., Greenhill v. Carpenter, 718 S.W.2d 268 (Tenn.Ct.App. 1986) (holding that a suit against a state employee in his official capacity is a suit against the state); Cox v. State, 217 Tenn. 644, 399 S.W.2d 776, 778 (1965) (holding that a suit against a state employee is akin to a suit against the state).

Tennessee Code Annotated § 9-8-307(h) provides that "[s]tate officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain."

In Thompson v. Regional Medical Center at Memphis, 748 F.Supp. 575 (W.D.Tenn. 1990), the court was presented with similar facts. In Thompson, residents employed and paid by the University of Tennessee, while on rotation at the Regional Medical Center at Memphis, were sued for malpractice. The attorneys for the plaintiffs argued that the residents were not entitled to immunity because they were not working in their capacity as state employees. The court noted that "the most important factor in determining whether the UT Doctors were state employees as defined by the

8

statute is whether the UT Doctors were paid by the state." (Id. at 577.) Because the residents were paid exclusively by the university, the court held that the residents were immune from suit.

Here, Nurse Sayger's uncontroverted affidavit states that she was employed and paid solely by the University of Tennessee, a state institution. Plaintiff does not allege any facts to support a finding that Nurse Sayger was not acting within the scope of her duties as a state employee or that Nurse Sayger acted willfully or maliciously. Therefore, Nurse Sayger is immune from suit, and the court GRANTS her motion for summary judgment.

## VI. Conclusion

For the foregoing reasons, Campbell Clinic's motion for summary judgment is DENIED and Nurse Sayger's motion for summary judgment is GRANTED.

So ORDERED this 30th day of March 2006.

_____
s/ SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE