IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| HELEN RICHARDSON, as Administratrix for the Estate of GEORGE RICHARDSON, JR., and as Legal Guardian of the Estate of TAVARES RICHARDSON, a minor | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 05-2145 Ma/V ) |
| MARION DUGDALE, M.D.; CHRISTOPHER BUCHANAN, M.D.; PATRICIA ADAMS-GRAVES, M.D.; UT MEDICAL GROUP, INC.; JOHN DOE, M.D., a/k/a Dr. BABB; and  METHODIST HEALTHCARE TRANSPLANT PROGRAM, L.L.C. d/b/a/ UT BOWLD HOSPITAL | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
_____

Plaintiff brings claims for medical malpractice. Before the court is Defendants Marion Dugdale, MD ("Dr. Dugdale"), Patricia Adams-Graves, MD ("Dr. Adams-Graves"), and UT Medical Group, Inc.'s motion for summary judgment filed on July 20, 2005, to which Plaintiff Helen Richardson ("Plaintiff"), as Administratrix of the Estate of George Richardson, Jr., Decedent ("Decedent"), and Legal Guardian for the Estate of Tavares Richardson, a minor, responded on April 14, 2006.

**I. Jurisdiction**

Jurisdiction is based on diversity of citizenship. Plaintiff is a resident and citizen of Virginia. ( Am. Compl. at ¶ 2.) Defendants Dr. Dugdale, Christopher Buchanan, M.D. ("Dr. Buchanan"), Dr. Adams-Graves, and John Babb, M.D., ("Dr. Babb"), are adult citizens of Tennessee. (Am. Compl. at ¶ 4-6,8, 10) Defendants UT Medical Group, Inc. and Methodist Healthcare Transplant Program, LLC d/b/a UT BOWLD Hospital ("Methodist") are Tennessee corporations. (Am. Compl. at ¶ 7, 9, 11.) The amount in controversy exceeds $75,000. This court has diversity jurisdiction under 28 U.S.C. § 1332.

**II. Background**

On the morning of February 27, 2004, Decedent was admitted to the Acute Receiving Area at Methodist and complained of severe pain in his right thigh. (Am. Compl. at ¶ 17.) Dr. Dugdale was Decedent's attending physician and took X-rays of Decedent's right thigh, which showed a total hip prosthesis, but no findings to explain Decedent's pain. (Am. Compl. at ¶ 18-20.) Dr. Dugdale consulted with Dr. Babb, who performed an orthopedic examination and injected Depomedrol into Decedent's right hip. (Am. Compl. at ¶ 21.) No blood work or other laboratory studies were ordered. Dr. Dugdale's final diagnosis, based on Dr. Babb's recommendation, was "right greater trochanteric bursitis." Decedent was given a prescription for Demerol, a narcotic analgesic, and instructed to

follow up at Campbell Clinic in two weeks, but to return to Methodist if his symptoms worsened. (Am. Compl. at ¶ 22-23.) Decedent was discharged from Methodist approximately three hours after his admission. (Am. Compl. at ¶ 24.)

On February 28, 2004, at approximately 10:10 p.m., Decedent and his sister Bobbie Moredock ("Moredock") returned to the Acute Receiving Area of Methodist. (Am. Compl. at ¶ 25.) Decedent informed his nurse, Rose Sayger ("Sayger"), that he had been seen on February 27th and given a shot and prescription for Demerol, but that he was still in pain.  (Am. Compl. at ¶ 26.) Decedent was evaluated by Dr. Buchanan, who provided medical care under the supervision of Dr. Adams-Graves. Dr. Buchanan's final diagnosis was sickle cell crisis, and he noted on the chart that Dr. Dugdale should be informed of the Decedent's status by the nursing staff. (Am. Compl. at ¶ 29-30.) No blood work or other laboratory studies were ordered, and Decedent was discharged at 1:25 a.m. despite Moredock's pleas that Decedent be admitted.  Moredock also asked to speak with Dr. Dugdale, but Nurse Sayger said that Dr. Dugdale was asleep and that Decedent should follow up with Dr. Dugdale "as scheduled."  (Am. Compl. at ¶ 34-35.)

Decedent was admitted to the Emergency Department at the Cross County Hospital in Wynne, Arkansas, on February 29, 2004, at approximately 3:45 p.m..  Decedent was evaluated by Dr. Godfrey Fondinka, who noted that Decedent's respirations were labored and

ordered labs. (Am. Compl. at ¶ 40.) Decedent was stabilized and transferred to Methodist, where he was pronounced dead at 8:07 a.m. on March 1, 2004. (Am. Compl. at ¶ 46.)

Plaintiff alleges that the Defendants failed to monitor, assess, and/ or treat Decedent's condition properly following his February 27, 2004 admission to the Acute Receiving Area. (Am. Compl. at ¶ 47.) Plaintiff alleges that Defendants were negligent, committed malpractice, and/or violated The Emergency Medical Treatment and Active Labor Act.  Plaintiff seeks compensatory damages in an amount up to three million dollars and punitive damages in an amount up to thirty million dollars.

**III. Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movants have met their initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make a contrary showing, summary judgment is appropriate, Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence

as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**IV. Choice of Law**

A federal district court is required to apply the "choice of law" rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cole v. Mileti, 133 F.3d 433, 437 (6th Cir. 1998). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by

side." Klaxon, 313 U.S. at 496. Therefore, this court must apply the Tennessee rule to determine which jurisdiction's law to apply.

For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). The injury occurred in Tennessee, and both parties assume that Tennessee law applies. No party alleges that another state has a more significant relationship to the litigation. The court will, therefore, apply Tennessee law.

**V. Analysis**

Under Tennessee Code Annotated 29-26-115, to establish a prima facie case of medical malpractice, the Plaintiff must: (1) establish the recognized standard of acceptable professional practice in the community; (2) offer evidence that the defendant failed to act with ordinary and reasonable care in accordance with such standards; and (3) offer evidence that, as a proximate result of the defendant's negligent acts or omissions, the plaintiff suffered injuries which would not otherwise have occurred.

The Plaintiff has submitted the Affidavit of Dr. Richard M. Sobel, MD ("Dr. Sobel"), as Exhibit 1 to her response to the motion for summary judgment. Dr. Sobel's expert testimony states the recognized standard of acceptable professional practice, provides evidence that Dr. Dugdale failed to act according to the prevailing standard, and concludes that, as a proximate result of Dr.

6

Dugdale's negligent acts or omissions, the Decedent died. Plaintiff has established a prima facie case of medical malpractice against Dr. Dugdale.  Dr. Dugdale, by affidavit, contends that her actions conformed to the recognized community standard of care. Material facts are in dispute about Dr. Dugdale's care and treatment of the Decedent.

Dr. Dugdale has admitted that she was acting in her capacity as an employee, agent, or servant of the UT Medical Group, Inc. when she treated the Decedent. (Answer of Marion Dugdale, Exhibit 3 of Plaintiff's Resp. to Mtn. for Summ. J.)  An employer can be held vicariously liable for the actions of its employees.  See generally, Johnson v. LeBoneheur Children's Med. Center, 74 S.W.3d 338 (Tenn. 2002).  Therefore, UT Medical Group Inc.'s liability is contingent upon a jury finding that Dr. Dugdale is liable. Summary judgment in favor of the UT Medical Group, Inc. must be denied because material facts are in dispute about the appropriateness of Dr. Dugdale's care and her liability for Decedent's death.

Although the Plaintiff has established disputed material facts as to Dr. Dugdale and the UT Medical Group Inc., she has not offered any evidence establishing a prima facie case of medical malpractice against Dr. Adams-Graves.

### VI. Conclusion

For the foregoing reasons, Dr. Adams-Graves' motion for summary judgment is GRANTED.  Dr. Dugdale and the UT Medical Group Inc.'s motion for summary judgment is DENIED.

So ORDERED this 4th day of August 2006.

_____

s/ SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE